Appeal of SAVOY OIL CO.          Docket No. 323.

Where an agreement, under which an interest in a leasehold is transferred, describes the transaction as a sale and the Commissioner assesses a profit tax on the money received in payment for such interest, the transaction will be treated as a sale and the tax approved in the absence of clear and convincing proof of another intent of the agreement.

The Board will not disturb the method employed by the Commissioner in calculating the capital amount used as a basis for arriving at a depletion rate in the absence of proof of error on the part of the Commissioner.

Submitted December 3, 1924; decided December 23, 1924.

*Harry G. Sundheim, Esq.*, for the taxpayer.

*A. Calder Mackay, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal is from a determination of a profits tax for the year 1917 in the amount of $56,821.68. From admissions in the pleadings, stipulations of the parties and testimony offered at the hearing, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation, organized under the laws of the State of New Jersey, with its principal office in New York City. During the year 1912, it acquired oil and gas mining leases on some 760 acres of unproven land in what is known as the Healton District in Carter County, Okla.

2. In 1916 the taxpayer entered into an agreement with an outside organization, whereby that organization received an undivided one-half interest in the oil and gas rights under the above-mentioned leases in consideration of drilling one well on the leased premises. The well was drilled and oil struck, though not in a commercially profitable quantity.

3. The taxpayer, not having sufficient funds to enable it to drill wells on its own account, entered into an agreement with the Burke-Hoffeld Oil Co., an Oklahoma corporation, on May 1, 1917. Under this agreement the taxpayer sold and assigned to the Burke-Hoffeld Oil Co. an undivided one-fourth interest in and to the oil and gas leases. The portions of the agreement which are relevant to the issues of this appeal are as follows:

> The party of the first part " (the taxpayer) * * * " hereby *sells and agrees* by good and sufficient assignment * * * *to transfer and convey* to the party of the second part " (Burke-Hoffeld Oil Co.) " an undivided one-fourth interest in, to and under the following-described oil and gas leases. [There follows a description of the leases.]
>
> *  *  *  *  *  *  *
>
> Party of the second part, in consideration therefor, *agrees to purchase* same and *to pay to the party of the first part for such undivided one-fourth interest* * * * the sum of two hundred fifty thousand dollars ($250,000) to be paid as follows: One hundred twenty-five thousand dollars ($125,000) in cash, receipt of which is hereby acknowledged by party of the first part; and the remaining one hundred twenty-five thousand dollars ($125,000) to be paid from the proceeds of one-half of the oil and gas produced and belonging to the party of the second part.
>
> *  *  *  *  *  *  *
>
> It is further agreed that the party of the second part shall be entitled * * * to the proceeds of that part of the oil and gas produced from said premises proportionate to the interest hereby sold, from and including the 21st day of April, 1917, and *the party of the second part,* from and including the said date, *agrees to pay its one-fourth part of the expense of operating and developing said leasehold and properties.* (Italics ours.)

4. The agreement contains no restriction on the taxpayer as to the uses to which the $125,000 paid to it in cash by the Burke-Hoffeld Oil Co., shall be put; nor does it impose any liability or

burden on the taxpayer "*to pay its one-fourth part of the expense of operating and developing said leasehold and properties,*" such as is placed on the Burke-Hoffeld Oil Co. by the last paragraph quoted above. The taxpayer showed by parol evidence that it retained an undivided one-quarter interest in the leases and that it expected to pay its quota of any operating and developing expense.

5. The cash payment of $125,000 received by the taxpayer for making the assignments under the above-described agreement was not distributed to the stockholders but was invested in Liberty Bonds, as being readily convertible into cash, and held as a reserve to meet what it considered to be its liability to bear one-fourth of the expense of any operations or development work which the Burke-Hoffeld Oil Co. might undertake, though the agreement placed no obligation on the Burke-Hoffeld Oil Co. to do any work.

6. The Commissioner held that the transaction between the taxpayer and the Burke-Hoffeld Oil Co., as defined in the above-mentioned agreement, was a sale and that the taxpayer was liable for profits taxes on the calculated profit thereon.

### DECISION.

The deficiency of $56,821.68 determined by the Commissioner for the calendar year 1917 is approved.

### OPINION.

GRAUPNER: The taxpayer contends that, in determining the tax, the Commissioner erred in the following particulars:

(1) In holding that the transaction between itself and the Burke-Hoffeld Oil Co. constituted a completed sale, on which a profits tax could be assessed, instead of holding (a) that the sale was incomplete and conditional until the balance of the $250,000 was paid, or (b) that the agreement provided for a joint venture between the parties and that there could be no profit or loss until the development of the leased properties was completed or the leases abandoned, or (c) that there was no profit to the taxpayer because the sum of $125,000, received by it was an advance by the Burke-Hoffeld Oil Co. to enable it to meet its liability for its pro rata of the cost of operations and development and, in effect, a contribution to capital.

(2) In calculating the capital amount used as a basis for arriving at the depletion rate for the year 1917 by using the value as at March 1, 1913, reduced by the amount of depletion claimed to have been sustained but not allowed by prior tax laws.

The taxpayer asserts that the determination of the tax presented in this appeal resulted from failure to recognize the real facts regarding the transaction resulting from its agreement with the Burke-Hoffeld Oil Co. On the hearing of the appeal every opportunity was given the taxpayer to present its proofs, and much testimony was admitted over the meritorious objections of the Solicitor in order to permit it to prove the errors alleged to have been made by the Commissioner.

Unquestionably, the terms of the agreement described a sale of an undivided one-fourth interest in the described gas and oil leases from the taxpayer to the Burke-Hoffeld Oil Co. and prescribed no restric-

tions on the use of the $125,000 cash paid to the taxpayer for the property. The president of the Savoy Oil Co. was permitted to testify in explanation of what he believed the duty of that corporation to be under the agreement. This testimony, briefly stated, developed the following: That, on May 1, 1917, the taxpayer had insufficient funds on hand to meet what it considered its quota of any operations or development work that might be done; that, if the Burke-Hoffeld Oil Co. carried on any operations or development work, the Savoy Oil Co. considered itself bound to pay one-fourth of the cost of such work; that the Burke-Hoffeld Oil Co. expected the taxpayer to pay one-fourth of the cost of such work; that the taxpayer corporation felt obligated to set aside the $125,000 cash received as a contingent or reserve fund to meet its share of the cost of any operations or development if and when such work was done, and did not consider that it had made any profit; that, therefore, the money had been invested in Liberty Bonds, as being easily convertible into cash, and held in its treasury. It was stipulated that, if three other directors of the corporation were present they would testify to the same effect. This testimony was admitted, over the objections of the Solicitor as to its competence, relevancy, and materiality to permit the taxpayer to attempt to prove the error of the position assumed by the Commissioner in determining the tax.

The testimony did not show that the money received by the taxpayer from the Burke-Hoffeld Oil Co. was in any way incumbered or its use restricted by any agreement between the taxpayer and the Burke-Hoffeld Oil Co., or between both or either of them with the outside organization that owned the undivided one-half interest in the leases. There is nothing in the record to show that there was any obligation to be performed by the Burke-Hoffeld Oil Co. after the making of the agreement of May 1, 1917, other than to pay the taxpayer $125,000 from the proceeds of one-eighth of the oil and gas produced and sold if and when such oil and gas was produced and sold, and if and when the Burke-Hoffeld Oil Co. decided that it would operate or develop the property. Nor is there anything in the record to show that the taxpayer could not have disposed of the cash in any way it saw fit or that it was legally bound to meet any definite or indefinite obligation from the money in question.

We are therefore confronted with this condition of fact: That the Savoy Oil Co. received $125,000 cash for assigning certain leasehold interests to the Burke-Hoffeld Oil Co. under an agreement that characterized the transaction as a sale; that the balance of the purchase price was limited by contingencies that might not happen, and that the Savoy Oil Co. had received $125,000. in cash for the property, which it might dispose of in any legal way it saw fit.

The taxpayer can not convert a sale into a conditional sale, a trust, a joint adventure, or an advance merely by its board of directors deciding that they did not consider it a sale. The taxpayer did not produce the minutes of any meeting of its stockholders or directors as evidence of its contentions, it did not produce any evidence of a collateral agreement between it and the Burke-Hoffeld Oil Co., showing that the sale evidenced by the agreement of May 1, 1917, was not a sale but was something else; instead, it chose to rely on parol evidence of conclusions drawn, after the lapse of seven years, by officers of the corporation.

61359—26——16

In the absence of convincing evidence that the transaction evidenced by the agreement of May 1, 1917, was not what it purports to be, viz, a sale, this Board can not accept any of the contentions advanced by the taxpayer purporting to show error on the part of the Commissioner in determining the tax.

As to the alleged error on the part of the Commissioner in calculating the amount used as a basis for arriving at the depletion rate for the year 1917, it is sufficient to state that the taxpayer has presented no evidence tending to prove such an error.

The deficiency determined by the Commissioner and set forth in the notice of deficiency mailed to the taxpayer on August 9, 1924, is approved.