966

CONSUMERS CONSTRUCTION COMPANY (DEL.), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

UTILITY MANAGEMENT CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ASSOCIATED UTILITIES INVESTING CORPORATION AS THE ASSERTED TRANSFEREE OF MANAGING AND INVESTING, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ASSOCIATED UTILITIES INVESTING CORPORATION (DEL.) AS THE ASSERTED TRANSFEREE OF UTILITY MANAGEMENT CORPORATION (DEL.) (FORMERLY MANAGING AND INVESTING, INCORPORATED), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE UTILITY MANAGEMENT CORPORATION (CONN.) AS THE ASSERTED TRANSFEREE OF MANAGING AND INVESTING, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE UTILITY MANAGEMENT CORPORATION (CONN.) AS THE ASSERTED TRANSFEREE OF UTILITY MANAGEMENT CORPORATION (DEL.) (FORMERLY MANAGING & INVESTING, INCORPORATED), PETITIONER, *v.* MISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59549, 59557, 59559, 62246, 62247, 62248, 62249.

Promulgated April 27, 1937.

*Charles M. Trammell, Esq., Francis J. Sweeney, Esq.,* and *Bradford S. Magill, Esq.,* for the petitioners.
*Chester A. Gwinn, Esq.,* for the respondent.

OPINION.

DISNEY: These proceedings, consolidated for trial· by stipulation between counsel at hearing, involve deficiencies as follows:

| Petitioner | Docket No. | Period | Deficiency |
|---|---|---|---|
| Consumers Construction Co. (Del.) | 59549 | Aug. 1 to Dec. 31, 1927 | $72,374.31 |
| Do | 59559 | Jan. 1 to Oct. 31, 1928 | 56,185.02 |
| Utility Management Corporation | 59557 | Apr. 4 to Sept. 30, 1928 | 38,893.83 |
| Associated Utilities Investing Corporation | 62246 | Calendar year 1927 | 65,339.99 |
| Associated Utilities Investing Corporation (Del.) | 62247 | Jan. 1 to April 3, 1928 | 17,725.92 |
| Utility Management Corporation (Conn.) | 62248 | Calendar year 1927 | 65,339.99 |
| Do | 62249 | Jan. 1 to April 3, 1928 | 17,725.92 |

During the period here in question the New England Gas & Electric Association, a Massachusetts form of trust, was affiliated with the Associated Gas & Electric Properties, likewise a Massachusetts form of trust. The Associated Gas & Electric Properties was, in turn, affiliated with the Associated Securities Corporation, a Delaware Corporation, which owned all of the class B stock of the Associated Gas & Electric Co., which had full voting rights. The Associated Securities Corporation and the Associated Gas & Electric Co. were held by the Commissioner to have been nonaffiliated during the period here in question.

The Associated Gas & Electric Co. and the New England Gas & Electric Association were holding companies (to apply that term in a general sense to both) for between 163 and 183 subsidiary operating companies. Most or all of these operating companies were managed by the J. G. White Management Corporation up to 1927. The J. G. White Management Corporation had contracts with some of these corporations, and others it served without any particular contract. In 1927 the situation was reviewed and a new basis entered into. The Consumers Construction Co. was organized March 30, 1927. There had been organized on September 18, 1924, under the laws of Delaware, a corporation called "Managing & Investing, Inc."; but by amendment to the certificate of incorporation on April 27, 1928, the name was changed to Utility Management Corporation. From the date of incorporation to August 1927 the common stock of this corporation had been individually owned. The J. G. White Management Corporation having a staff of experts who furnished managerial and engineering services, it was arranged in 1927 that the operating companies and the Associated Gas & Electric group enter into a contract with the Utility Management Corporation of Delaware for managerial services for a consideration of 2½ percent of the gross operating revenues of the operating companies. Likewise these operating subsidiary companies also entered into contracts with the

Consumers Construction Co. for supervision of the construction activities of the operating companies, in consideration of 7½ percent of the amount expended for construction. Neither the Consumers Construction Co. nor the Utility Management Corporation of Delaware at that time had any employees, nor rendered any services themselves. The services were rendered by the J. G. White Management Corporation under an arrangement whereby the Utility Management Corporation was to collect the 2½ percent of gross operating revenue from the operating companies, and therefrom to pay the J. G. White Management Corporation at the rate of $200,000 per annum for managing the operation of the subsidiary operating companies under contract with the Utility Management Corporation; a generally similar arrangement was made between the Consumers Construction Co. and J. G. White Management Corporation, and thereunder in the fall of 1928 the Consumers Construction Co. paid the J. G. White Management Corporation approximately $80,000 for services rendered by the latter corporation for the operating companies of the Associated Gas & Electric group, the 7½ percent fee for which had been collected by the Consumers Construction Co.

It was the plan at the time the Utility Management Corporation of Delaware and the Consumers Construction Co. were organized and started out in this management work and construction contracts in 1927 and 1928, that there would be charges for the management services and the construction services something in excess of the actual cost thereof.

The New England Gas & Electric Association also had subsidiary operating companies which entered into the management contracts and construction contracts with Consumers Construction Co. and the Utility Management Corporation in the same general manner as the subsidiary operating companies of the Associated Gas & Electric Co. It was calculated that the amount of construction fees contributed by the subsidiary operating companies of the New England Gas & Electric Association was approximately 10 percent and that the remaining 90 percent was to be contributed by subsidiary operating companies of the Associated Gas & Electric Co. or its subsidiaries; likewise it was calculated that approximately 25 percent of the payment for managerial services would be made by the subsidiary operating companies of the New England Gas & Electric Association, while about 75 percent would be contributed by subsidiaries of the Associated Gas & Electric Co. or its subsidiaries. Therefore as to the Consumers Construction Co., 10 percent of the common stock was issued to the New England Gas & Electric Association and 90 percent to the Associated Gas & Electric Co., and its holding company subsidiaries, while in the case of Utility Management Corporation 25 percent of the common stock was issued to and held by the New

England Gas & Electric Association, and 75 percent was issued to and held by the Associated Gas & Electric Co., or its holding company subsidiaries. The Consumers Construction Co. issued preferred stock which was held by the Eastern Utilities Investing Corporation, an investment trust, which carried same at $5,000,000 on its books.. The Utility Management Corporation also issued preferred stock, and issued 10,000 shares of common stock to the Associated Gas & Electric Co. as part payment for the management contracts herein involved. The Eastern Utilities Investing Corporation did not issue any bonds until 1929. The Eastern Utilities Investing Corporation sold and transferred to the New England Gas & Electric Association some 14,500 shares of Eastern Utilities Investing Corporation $7 preferred stock. Practically all of the remainder of stock of the Eastern Utilities Investing Corporation, with the exception of such amounts as the public held, was owned by the Associated Gas & Electric Co. or subsidiaries thereof. The New England Gas & Electric Association had to pay for its Eastern Utilities Investing Corporation stock. The Eastern Utilities Investing Corporation issued several classes of preferred stock, some of which was held by the public. H. C. Hopson was treasurer of both the Associated Gas & Electric Co. and the New England Gas & Electric Association, and was the author of the plans carried out as above set forth. He directed the management form of organization of the 163 to 183 operating companies, subject to the board of directors. Actually, neither the Consumers Construction Co. nor the Utility Management Corporation of Delaware had any employees until August 1, 1928, when certain engineering employees were transferred from the staff of the J. G. White Management Corporation to the staff of the Consumers Construction Co. Prior to August 1, 1928, the engineering staff of the J. G. White Management Corporation had been utilized. The Utility Management Corporation never at any time had employees. The J. G. White Management Corporation was paid out of the percentages collected by the Utility Management Corporation, and the Consumers Construction Co. from the operating subsidiaries, but there was a surplus or residual after the payment to the J. G. White Management Corporation. This residual was distributed as dividends by the Consumers Construction Co. and the Utility Management Corporation, respectively, to their stockholders. The Utility Management Corporation and the Consumers Construction Co. were each duly organized corporations with officres, directors, and stockholders.

The Utility Management Corporation and the. Consumers Construction Co. of Delaware had no dealings with anyone outside of the companies in the Associated Gas & Electric system and did not actually render any services to anyone up to August 1928, except

as they were performed by the J. G. White Management Corporation on their behalf. The Utility Management Corporation and the Consumers Construction Co. of Delaware were set up solely for the use and benefit and service of the Associated Gas & Electric Co. and the New England Gas & Electric Association and holding companies subsidiary to them. The only assets the Utility Management Corporation had were the contracts (to manage the subsidiary operating companies) and some temporary accounts receivable. The Consumers Construction Co. had no assets other than the contracts to render construction services to the subsidiary operating companies, and some little accounts receivable and temporary cash.

The Utility Management Corporation and the Consumers Construction Co. paid J. G. White Management Corporation in the fall of 1928 for services rendered, covering the period from April 1, 1927, to August 1, 1928. On or about May 1, 1928, the Utility Management Corporation acquired 100 percent of the common stock of the J. G. White Management Corporation, and from that time on the Utility Management Corporation ceased to function, and the dealings were directly between the J. G. White Management Corporation and the operating companies.

The Consumers Construction Co. acquired some stock of the J. G. White Management Corporation which had been carried by the Utility Management Corporation. Sometime early in 1928 the stock of W. S. Barstow & Co. was acquired by the Associated Gas & Electric Co. or its subsidiaries. W. S. Barstow & Co. had a reputation as an engineering company. The engineering staff, which was transferred to the Consumers Construction Co. by the J. G. White Management Corporation on August 1, 1928, remained with the Consumers Construction Co. until the Associated Gas & Electric Co., or its subsidiaries, acquired the stock of W. S. Barstow & Co. The stock of the Consumers Construction Co. was issued in consideration for the contracts they were permitted to enter into with the subsidiaries. The 14,500 shares of Eastern Utilities Investing Corporation $7 participating preferred stock were acquired by the New England Gas & Electric Association in either July or August of 1927, in order to be sure that the New England Gas & Electric Association would receive its equitable part of the earnings from the Consumers Construction Co. which went to the Eastern Utilities Investing Corporation. The purpose of the issuance of preferred stock by the Consumers Construction Co. was to arrange for additional income to the Eastern Utilities Investing Corporation, so that there would be no possibility that the charges on the securities which were held by the public, which ranked ahead of the securities issued by the Eastern Utilities Investing Corporation and owned by the Associated Gas & Electric Co., would fail to be determined and paid. That

protected, or assisted in protecting, the investment of the Associated Gas & Electric Co. in the Eastern Utilities Investing Corporation; likewise, some of the junior preferred stock of the Eastern Utilities Investing Corporation was acquired by the New England Gas & Electric Association. The additional income to the Eastern Utilities Investing Corporation was an element of protection of the New England Gas & Electric Association's investment in the junior preferred stock, so that the Eastern Utilities Investing Corporation would always be in a position to have enough of the flow of earnings to them to be sure that they could take care of the charges or income on securities that ranked ahead of the securities owned by the Associated Gas & Electric Co., or subsidiaries, and the New England Gas & Electric Association.

The number of shares of the $7 junior preferred stock of the Eastern Utilities Investing Corporation was calculated to be an amount that would carry enough income to the New England Gas & Electric Association to give them their proper proportion of the distribution of Consumers Construction Co. preferred stock which would fall to them indirectly through the Eastern Utilities Investing Corporation.

The corporations involved in these cases originally filed a consolidated return. This was refused acceptance by the Commissioner of Internal Revenue. The Commissioner's ruling has been accepted, and the question of affiliation is no longer an issue herein, and the amounts of deficiencies, if any are found by the Board, were stipulated upon trial by counsel for petitioners and respondent. It was further agreed that the transferee liability asserted in Docket No. 62246 is a duplicate of that set up in Docket No. 62248, and that if a deficiency is sustained against the Utility Management Corporation of Connecticut in Docket No. 62248, no liability shall be found in Docket No. 62246; likewise it was stipulated that if a deficiency is sustained against the Utility Management Corporation of Connecticut in Docket No. 62249, no liability shall be found in the case of the Associated Utilities Investing Corporation, Docket No. 62247.

Petitioners announced that no claim for relief is made under section 45 of the Revenue Act of 1928, or section 240 (f) of the Revenue Act of 1926.

The only question which remains for consideration, therefore, is whether the percentages collected by the Utility Management Corporation and the Consumers Construction Co. from operating companies subsidiary to the New England Gas & Electric Association and Associated Gas & Electric Co. were income in the taxable years to the Utility Management Corporation and the Consumers Construction Co., or whether it was income to the holding companies, the New England Gas & Electric Association and the Associated

Gas & Electric Co., which received dividends by virtue of their stock holdings in the Utility Management Corporation and the Consumers Construction Co., and in the Eastern Utilities Investing Corporation through its ownership of preferred stock in said corporations.

The question is essentially one of a conflict of corporate entity as against theory of agency on the part of the Utility Management Corporation and the Consumers Construction Co. for and on behalf of two holding companies (using that term in a general sense), the Associated Gas & Electric Co. and New England Gas & Electric Association. Petitioners argue that the two taxpayer corporations acted as a mere instrumentality, agent, or adjunct of the holding corporations.

We find ourselves unable to agree with this view. The various authorities cited do not control a case involving the situation here at hand, in which we find nothing to overcome the Commissioner's determination. The corporate entities are as to form not denied. The corporations were set up for business purposes, and "Where a corporate cloak is resorted to for its business benefits, the burdens, if any, must also be assumed." *Broadway Strand Theatre Co.*, 12 B. T. A. 1052. This is not, we think, a mere example of conduit, or simple agency, passing benefits to a principal. These two corporations each entered into contracts to render services for a large number of operating companies; in turn, they employed the J. G. White Management Corporation to perform these services—with the exception of those which were rendered by the employees which the Consumers Construction Co. had after August 1, 1928. Large amounts of money were collected on the one hand and expended on the other in connection with these contracts. Each corporation did have assets consisting of the contracts, which netted them large sums, and other assets of small value. The Consumers Construction Co. issued large amounts of preferred stock to a company not entirely owned by the holding companies here involved, to wit, the New England Gas & Electric Association and Associated Gas & Electric Co., for it appears that the public held stock in the Eastern Utilities Investing Corporation, the holder of preferred stock in the Consumers Construction Co. The Utility Management Corporation also issued preferred stock, the ownership of which is not shown to be entirely in the holding companies. The residual after the payment for services of the J. G. White Management Corporation can not be said to be simply transferred to the holding companies as owners of the common stock in the taxpayer corporations, since it is apparent from the record that preferred stock, at least in the case of the Consumers Construction Co., must first receive its dividends, and that some at least of the dividends from such preferred stock were received by

the public, as owners of stock in the Eastern Utilities Investing Corporation, and never reached the holding corporations; while in the case of the Utility Management Corporation there is no showing as to whether preferred stock was held by others than the above named holding companies. Some part of the dividends may have reached the public as owners of such preferred stock. If the Consumers Construction Co. was a mere agent for the holding companies, it was also a mere agent for the public, which held stock in the Eastern Utilities Investing Corporation, the holder of its preferred stock. Such use of the taxpayer corporations is inconsistent with the theory that they were mere conduits or simple agencies for the holding corporations. We have already noted that, for a period at least, the Consumers Construction Co. had employees.

We find it impossible to believe that corporations entering into the extensive contracts and liabilities, and receiving the large amounts of money under such contracts as in this case, are mere bookkeeping entries or shells, as petitioners denominate themselves. Corporate entity is to be disregarded only in extraordinary cases. Usually it is done to meet some fraudulent intent. There is no convincing reason for deviation from the usual recognition of corporate entity in favor of holding corporations which, according to their own theories and claims herein, set up corporate entities and caused them to enter into obligations with the public, not only by way of contract, but as to one of them by way of sale of preferred stock. The conduit through which the contributions of the operating companies reaches the holding companies is too indirect for purposes as practical as is taxation. There may be stoppages in this conduit in its way through two successive issues of preferred stock, and some of the contents of the conduit is diverted to the public. It may be that there was no preferred stock issued to the public by the Utility Management Corporation, but the petitioners, with the burden, have not so shown. Regardless thereof, we believe that all of the facts indicate that these taxpayer companies, parties to extensive contracts, the proceeds of which reached the holding corporations only by way of dividends, are not mere bookkeeping entries, but are to be accorded the usual recognition of corporate entity. The cases cited by petitioners do not convince. There are, of course, situations as above indicated where corporate entity is disregarded; and generalities along that line of thought are of little or no value in a consideration of a particular situation.

*In re Muncie Pulp Co.*, 139 Fed. 546, cited by petitioners, was a case of common ownership of two corporations by two men where no separate books were kept, no creditors shown, and the question arose in bankruptcy when the receiver for the first corporation demanded

the properties of the second, which had received its properties without consideration from the first. This was a question of title, not taxes.

The case of *Helvering* v. *Gordon*, 87 Fed. (2d) 663, involved common ownership of two corporations by Gordon and wife. The second corporation performed no services and furnished no goods to the first one, or to anyone else. The record does not indicate that dividends were paid by it. The idea of mere conduit can not be escaped in that case. Moreover, section 45 of the Revenue Act of 1928 was relied on for the decision, whereas herein reliance thereon is expressly disallowed.

In *Ansco Photo Products, Inc.* v. *Clark*, 34 Fed. (2d) 568, the question was merely one as to whether the one corporation was a mere conduit when it transferred, immediately or soon after receipt, certain moneys to the stockholders of a subsidiary, to correct an error, the money not belonging to the corporation sought to be charged with taxes.

We have examined the other decisions cited by petitioners and find them of no assistance to the solution of the question here.

Upon consideration of all of the facts involved herein, we conclude and hold that there is no sufficient reason for disregarding corporate entity, and therefore hold and render decision that the taxpayer corporations are respectively liable for the deficiencies, the amounts of which have been stipulated as follows: in Docket No. 59549, Consumers Construction Co. (Del.), in the amount of $49,953.63, for the period from August 1 to December 31, 1927; in Docket No. 59559, Consumers Construction Co. (Del.), in the amount of $51,841.42, covering the period from January 1 to October 31, 1928; in Docket No. 62248, the Utility Management · Corporation (Conn.) as the asserted transferee of Managing & Investing, Inc., in the amount of $65,339.99, for the calendar year 1927; and judgment of no liability at law or in equity is therefore rendered in Docket No. 62246, Associated Utilities Investing Corporation as the asserted transferee of Managing & Investing, Inc.; in Docket No. 62249, the Utility Management Corporation (Conn.) as the asserted transferee of Utility Management Corporation (Del.) (formerly Managing & Investing, Inc.), in the amount of $19,089.41, for the period from January 1 to April 3, 1928; and therefore judgment of no liability at law or in equity is rendered in Docket No. 62247, Associated Utilities Investing Corporation (Del.) as the asserted transferee of Utility Management Corporation (Del.) (formerly Managing & Investing, Inc.); in Docket No. 59557, Utility Management Corporation, (Conn.), in the amount of $40,602.31 for the period April 4 to September 30, 1928.