THOMAS F. BAYARD, TRUSTEE OF THE EASTERN UTILITIES INVESTING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59550. Promulgated October 7, 1938.

*Charles M. Trammell, Esq., Bradford S. Magill, Esq., Dean P. Kimball, Esq.,* and *Francis J. Sweeney, Esq.,* for the petitioner.

*Chester A. Gwinn, Esq.,* for the respondent.

784

788

BLACK: The sole issue in this proceeding is whether petitioner was affiliated with the Associated Gas & Electric Co. (generally referred to in this report as the Associated Co.) for the period August 1, 1927, to December 31, 1928. The applicable statutes are section 240 (d) of the Revenue Act of 1926 and section 142 (c) of the Revenue Act of 1928. The pertinent provisions of these sections are substantially identical. Those of the 1928 Act provide:

(c) *Definition of affiliation.*—For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the stock of the other or others, or (2) if at least 95 per centum of the stock of two or more corporations is owned by the same interests. As used in this subsection the term "stock" does not include nonvoting stock which is limited and preferred as to dividends.

The ownership referred to in the applicable statutes pertaining to affiliation means beneficial ownership. *Handy & Harman* v. *Burnet*, 284 U. S. 136.

The parties are in agreement that the question of affiliation in this proceeding is narrowed to a determination of the beneficial ownership of the 100,000 shares of petitioner's class B voting common stock during the period August 1, 1927, to December 31, 1928. If this beneficial ownership was in the Associated Co. or its wholly owned subsidiary, the Associated Gas & Electric Securities Co., respondent concedes our decision must be for the petitioner; otherwise, petitioner concedes it must be for the respondent.

Petitioner, in support of its contention that its class B stock was during the period in question beneficially owned by the Associated Co. or one of its affiliates, relies upon six points, namely, (1) that the issue before us has in effect been admitted by the respondent by reason of the fact that in the proceedings for reorganization of petitioner under section 77 B of the Bankruptcy Act, now pending in the United States District Court for the District of Delaware, the United States Attorney in a petition for examination of designated persons, referred to the Associated Co. as petitioner's "parent com-

pany" during the year 1929; (2) that during the period involved the Associated Co. or one of its determined affiliates had legal title to petitioner's class B stock; (3) that if the trust had any title to petitioner's class B stock, it held such title only as an agent or nominee of the Associated Co.; (4) that, by virtue of the option contract of July 25, 1927, as construed by the contracting parties, the record transfer to the trust of petitioner's class B stock was not a sale, but at most a transfer in trust; (5) that by virtue of oral agreements and understandings between the parties involved, the Associated Co. was the beneficial owner of petitioner's class B stock; and (6) that the purpose of the revenue acts, and particularly the provisions thereof relating to consolidated returns, can be carried out only by permitting the consolidation of petitioner with the Associated Co. We shall consider these points in their regular order.

*Point (1)*.—Petitioner contends that the sworn statement made by the United States Attorney for the District of Delaware in the petition for examination of designated persons filed in the proceedings for reorganization of petitioner, pursuant to section 77 B of the Bankruptcy Act, as amended, now pending in the United States District Court for the District of Delaware, that a certain prospectus issued by petitioner in 1929 failed to state that petitioner's substantial investment in the "stock of its parent company, Associated Gas and Electric Company * * *" has the effect of an admission on the part of the respondent in the instant proceeding that petitioner was affiliated with the Associated Co. as the term "affiliated" is used in the applicable statutes, sections 240 (d) and 142 (c), *supra*. The basis of this contention is that, where corporations are deemed affiliated within the applicable revenue statute, it is customary to refer to the corporation which owns the required percentage of the stock of another or others as the parent corporation. In fact, Congress, in providing for consolidated returns for 1929 and subsequent years, in section 141 (d) of the Revenue Act of 1928, used the term "a common parent corporation * * *." Petitioner argues therefore that, when the United States Attorney for the District of Delaware referred to the Associated Co. as petitioner's "parent company", such allegation under oath had the same effect as if counsel for the respondent in the instant proceeding had admitted that the two corporations were affiliated, since, as contended by petitioner, the United States Attorney and counsel for respondent are both in effect representatives of the United States of America. Assuming without deciding that the United States Attorney for the District of Delaware could, in another different proceeding and in the manner alleged by petitioner, bind the United States on some issue involved in an entirely separate proceeding such as we now have before us, we do not think he did so in the present instance.

Without discussing all the arguments made pro and con by the parties on this point, we deem it sufficient to say that the term "parent company" is by no means synonymous with the term "affiliated" as used in the applicable statutes. Frequently in cases involving the question of affiliation one of two corporations will for convenience be referred to as the "parent company" and yet the two corporations will be held not affiliated. In *Commissioner* v. *Terre Haute Electric Co.*, 57 Fed. (2d) 697; certiorari denied, 292 U. S. 624, the Circuit Court's opinion opened with the question: "Were the taxpayer, the Terre Haute Electric Company, and its *parent company*, the Terre Haute, Indianapolis and Eastern Traction Company, *affiliated* within the meaning of that word as used in the Revenue Act?" [Italics supplied.] The two companies in that case were held not affiliated, although the one company was the parent company of the other. Crowell's Dictionary of Business and Finance (Rev. Ed.), defines "parent company" as follows:

> *Parent Company.* One of which other companies derive authority. A company owning a patent may grant to other companies the right to use the patent. The parent company generally owns a controlling interest in a company which operates under authority from it, but this is not necessarily the case. This term is sometimes used for Holding Company or Controlling Company. * * *

In the large field of corporation law the term "parent company" is often used in referring to a corporation owning a bare majority of the stock of another or others. See Fletcher Cyclopedia Corporations (Permanent Ed.), vol. 6, secs. 2821 to 2844. But a bare majority is not sufficient to permit affiliation under the revenue acts. The term "parent company" is not defined in the applicable statutes now under consideration. As previously shown, it is a rather loose term, lacking in any precise definition. During the period in question petitioner had outstanding several classes of preferred stock, substantially all of which was owned by the Associated Co. We think this preferred stock could also be considered in determining whether in a broad sense the Associated Co. was petitioner's parent company. Since the Associated Co. or one of its wholly owned subsidiaries owned 100 percent of petitioner's class A common stock and substantially all of its preferred stock, it is apparent that it owned more than a majority of all the outstanding stock. But without the ownership of the required amount of the class B stock the two corporations would not be affiliated, although one might be referred to as the parent of the other. Therefore, it is our opinion that the allegation made by the United States Attorney that the Associated Co. was petitioner's parent company does not in any way prove that petitioner was affiliated with the Associated Co. during the period in controversy. The petitioner's contention on this point is denied.

*Point (2).*—Petitioner's second point is that, since it was stipulated that the certificate representing the 100,000 shares of its class B stock was during the period involved in the name of Daly & Co., as nominees of an undisclosed principal, deposited in a vault leased by the Associated Co., and also in view of Hopson's testimony that the undisclosed principal of Daly & Co. was the Associated Co., the legal title to the shares was never transferred to the trust, but remained in the Associated Gas & Electric Securities Co., a wholly owned subsidiary of the Associated Co. Petitioner cites Fletcher Cyclopedia Corporations (Permanent Ed.), vol. 12, sec. 5484; *Bank of Atchison County* v. *Durfee*, 118 Mo. 431; 24 S. W. 133, and *Re Broomhall, Killough & Co.*, 47 Fed. (2d) 948, in support of the general rule that, in the absence of an express agreement to the contrary, there must be a delivery of some document representing shares of stock in order to constitute a valid transfer. This is undoubtedly the general rule, but section 5484, *supra*, also states:

There may be a constructive delivery and acceptance, unaccompanied by a manual delivery or actual change of custody resulting from acts and conduct from dealing with stock, when there has been a change in the relation of the parties to it.

In *De Nunzio* v. *De Nunzio*, 90 Conn. 342; 97 Atl. 323, it was stated that "Both acceptance and receipt and therefore delivery may be inferred from the attendant circumstances." The attendant circumstances in the instant proceedings are set forth at length in our findings. We think they were of such a nature as to show a very decided intention on the part of the contracting parties to dispense with the manual delivery or actual change of custody of the certificate in question. The certificate during the entire period was in the "street" name of Daly & Co., a circumstance which was not at all uncommon in view of the option to repurchase contained in the contract of July 25, 1927, between the trust and the Associated Co. See Fletcher Cyclopedia Corporations (Permanent Ed.), vol. 19, sec. 8981, on stock in "street" names. Daly & Co. was the street name, or nominee partnership, for all the companies in the Associated Gas & Electric System, which included the trust and the Associated Co. and its wholly owned subsidiaries. Therefore, Daly & Co. was the trust's agent as well as the agent for the Associated Co., and, in view of the July 25, 1927, contract above referred to and the contemporaneous records made by the trust and the Associated Gas & Electric Securities Co., the conclusion, in our opinion, is inescapable that Daly & Co. held the certificate for the 100,000 shares of petitioner's class B voting common stock during the period August 1, 1927, to December 31, 1928, for the trust rather than the Associated Co. or its subsidiary, the Associated Gas & Electric Securities Co., as testified to by Hopson.

Petitioner also cites *Stiver* v. *Commissioner*, 90 Fed. (2d) 505, as being a case in which an alleged similar agreement was held to be an option rather than a sale. We do not, however, regard this case as being in point, as its facts are quite different from those here involved.

*Points (3), (4), (5)*.—Under these points petitioner argues that if the trust held any title to petitioner's class B stock, it held such title as an agent, nominee or trustee for the Associated Co., and that therefore the latter company was the beneficial owner of petitioner's class B stock. Petitioner cites eight court and Board decisions and also a Bureau ruling, to wit, G. C. M. 8982, C. B. X–1, p. 250, in support of the proposition that a corporation, as well as an individual, may hold technical title to property as a mere nominee, agent, or trustee. We do not question the soundness of such a view, but we fail to see wherein it is of any help to petitioner in the instant case. An examination of the 37-page declaration of trust shows that the trust was organized and had authority to engage in an unusually wide and diversified field of business activities. It issued to a party unaffiliated with the Associated Co. all of its stock for $100,000 in cash. It then entered into a written contract with the Associated Co. in which it agreed to purchase petitioner's 100,000 shares of class B voting common stock for a consideration of $100,000, and further agreed that the Associated Co. "shall have the option, at any time after the expiration of five years and prior to the expiration of ten years" from the date of issuance to the trust "or its nominee" of petitioner's class B stock, to purchase such stock upon the terms set out in our findings. The Associated Gas & Electric Securities Co. then purchased from petitioner all of its class A and class B common stock for $100,000. The stock was issued in the name of Daly & Co. and placed in a vault leased by the Associated Co. On the books of Associated Gas & Electric Securities Co. the trust was charged with $100,000 "To record sale as at July 31, 1927, of 100,000 shares Eastern Utilities Investing Corp. Class 'B' Stock." On the books of the trust the investment account was charged with 100,000 shares of class B stock of the Eastern Utilities Investing Corporation, "To record the purchase of the former securities for $100,000 cash." The trust later used the $100,000 which it received for the issuance of its own stock to pay for the 100,000 shares of petitioner's class B stock, which $100,000 was received by the Associated Gas & Electric Securities Co. on or about April 10, 1928.

Notwithstanding all of the above recorded corporate and trust evidence of what the transactions were, petitioner now offers the testimony of Hopson, who was the financial vice president of the Associated Co., an officer of petitioner, and one of the trustees of the Associated Gas & Electric Properties, to prove that the trans-

actions were something different from that which they purported to be. But we are not convinced by this testimony. The trust was more than a mere agency or conduit or nominee of the Associated Co. Its business transactions were real and not mere bookkeeping entries and must be given their usual legal effect. Cf. *Consumers Construction Co. (Del.)*, 35 B. T. A. 966. In the latter case pretty much the same sort of a contention was made as is made in the instant case, but we denied it. The main difference in that case from the instant case is that in the *Consumers Construction Co.* case the issue was as to income, whereas here the issue is as to affiliation, but we do not think this difference serves to distinguish the two cases, as petitioner argues in its brief. Our decision was affirmed by the Second Circuit in *Consumers Construction Co.* v. *Commissioner*, 94 Fed. (2d) 731.

Income taxes are levied with respect to annual periods, and each annual period must necessarily stand by itself. *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359; *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301; *Woolford Realty Co.* v. *Rose*, 286 U. S. 319; *Helvering* v. *Morgan's Inc.*, 293 U. S. 121; *MacMillan Co.*, 4 B. T. A. 251. We are concerned here with the situation as it existed during the taxable years 1927 and 1928 and not as it existed in 1932. During the period from August 1, 1927, to December 31, 1928, it is our opinion, and we have so found as a fact, that the beneficial ownership of petitioner's 100,000 shares of class B voting common stock was in the trust and not in the Associated Co. or any of its subsidiaries. To otherwise hold would be to completely disregard corporate and trust records which were made contemporaneous with the transactions involved and to rely upon oral testimony which is not convincing. It follows therefore that the trust beneficially owned the title to the stock for itself and not as nominee, agent or trustee for the Associated Co. or any of its subsidiaries. The cases of *Dome Co.*, 26 B. T. A. 967, and *Mark A. Mayer*, 36 B. T. A. 117, specifically relied upon by petitioner, are distinguishable upon their facts.

As we said in *Savoy Oil Co.*, 1 B. T. A. 230:

The taxpayer can not convert a sale into a conditional sale, a trust, a joint adventure, or an advance merely by its board of directors deciding that they did not consider it a sale. The taxpayer did not produce the minutes of any meeting of its stockholders or directors as evidence of its contentions, it did not produce any evidence of a collateral agreement between it and the Burke-Hoffield Oil Co., showing that the sale evidenced by the agreement of May 1, 1917, was not a sale but was something else; instead, it chose to rely on parol evidence of conclusions drawn, after the lapse of seven years, by officers of the corporation.

In the absence of convincing evidence that the transaction evidenced by the agreement of May 1, 1917, was not what it purports to be, viz., a sale, this

Board can not accept any of the contentions advanced by the taxpayer purporting to show error on the part of the Commissioner in determining the tax.

Before passing these points we shall refer briefly to *Lavenstein Corporation* v. *Commissioner*, 25 Fed. (2d) 375, cited by petitioner as having a controlling effect on the instant proceeding. That case involved the question whether the petitioner there was affiliated with the Lavenstein Brothers Co. under section 240 (b) of the Revenue Act of 1918, and the question turned on whether the three Lavenstein brothers, who owned all the stock of the petitioner in that case, also owned substantially all the stock of the other corporation. The facts showed that the brothers had transferred all the stock, except two shares, of the Lavenstein Brothers Co. to a creditors' committee "as security for the claims of creditors * * *." The Fourth Circuit, in allowing affiliation, held that the brothers, however, remained the owners of the stock so transferred because "the Lavensteins could have had the stock transferred to them at any time by merely paying the claims of creditors * * *." In the instant proceeding the Associated Co. did not have the right to reacquire petitioner's class B stock during the taxable years in question and not until after the expiration of five years from the date of issuance to the trust, nor was the class B stock up as security to secure the payment of any loan. Therefore the *Lavenstein* case, in our opinion, does not control the question here involved.

*Point (6).*—Under this point petitioner's main propositions are that facts rather than bookkeeping entries control; and that our decision in *United National Corporation*, 33 B. T. A. 790, is practically on all fours with petitioner's contentions in the instant proceeding and that therefore the Board should reach the same conclusion here as it did there.

"Bookkeeping entries, though in some circumstances of evidential value, are not determinative of tax liability." *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216. But when the bookkeeping entries actually record the true facts, the rule thus emphasized by petitioner is not applicable. We think this is the situation in the instant proceeding. We have carefully considered all the evidence in the case and are unable to find that the intention of the parties interested in petitioner's class B stock was other than that which was so clearly expressed in the written agreement between the Associated Co. and the trust on July 25, 1927. This agreement provided, among other things (see paragraph 3 of the agreement set out in our findings), that "until and unless said option shall be exercised," the trust "shall be and continue to remain the absolute owner" of the shares in question. There were urgent business reasons why this should be so.

Fred S. Burroughs testified as a witness for petitioner. He was a member of the board of directors of the Associated Co. and was the representative on the board of Harris, Forbes & Co., bankers for the Associated Co. He testified that in 1927, when Harris, Forbes & Co. agreed to float $35,000,000 debentures for petitioner, the bankers did not want the control of petitioner to appear in the Associated Co. This testimony and other testimony in the record shows to our satisfaction that it was the purpose of all the parties to the transaction to have the trust acquire actual ownership of petitioner's class B stock, with the option that the Associated Co. or one of its subsidiaries could, after five years, reacquire the stock, and that what was done was to accomplish that purpose. Now, after the lapse of several years, petitioner asks us to find that what was done, as shown by the corporate and trust records, was a sham and subterfuge and that from the beginning it was the intention that the beneficial ownership of petitioner's class B stock should not be in the trust, but should be in the Associated Co. or one of its subsidiaries. We are asked to do this largely on the strength of the testimony of the witnesses Hopson and Burroughs. We think we may not treat trust and corporate records so lightly, especially when there is ample evidence in the record to corroborate the fact that these records were meant to record the transactions as they really were.

The *United National Corporation* case is easily distinguishable from the instant proceeding. There the alleged sale was made to a subsidiary of the alleged seller. Here the trust was not a subsidiary of the Associated Co. But of much more importance is the distinguishable fact that in the *United National Corporation* case the alleged seller had an option to repurchase at any time, whereas in the instant proceeding the Associated Co. had no option to repurchase whatever during the taxable years in question. Furthermore, the evidence in the *United National Corporation* case was clear and convincing that the whole transaction was intended as a loan, with the stock merely being transferred as collateral security therefor. Here the convincing evidence is that of an outright sale to the trust of 100,000 shares class B stock of petitioner, with an option to repurchase after a period of five years.

It is our conclusion, and we have so found as a fact, that during the period August 1, 1927, to December 31, 1928, petitioner's 100,000 shares of class B voting common stock were owned by the Eastern Utilities Investing Trust. It follows, therefore, that during the taxable years 1927 and 1928, petitioner was not affiliated with the Associated Gas & Electric Co. and its affiliated corporations and associations.

Reviewed by the Board.

*Decision will be entered under Rule 50.*